**Carrie P. HARRIS, et al., Plaintiffs,**

v.

**William L. LUKHARD, et al.,
Defendants.**

Civ. A. No. 80–0162(L).

United States District Court,
W. D. Virginia,
Lynchburg Division.

June 29, 1982.

Jane D. Hickey, Sp. Asst. Atty. Gen., Lynchburg Regional Office, Dept. of Welfare, Lynchburg, Va., for State defendants.

## OPINION

TURK, Chief Judge.

An individual who owns too much real property cannot qualify for Medicaid benefits. The Commonwealth of Virginia uses certain standards to determine the amount and the value of a Medicaid applicant's real property. Four plaintiffs filed this action to challenge these standards on the grounds that the Commonwealth's regulations violate Title XIX of the Social Security Act, the due process and equal protection clauses of the fourteenth amendment, and in part the Virginia Administrative Process Act, Va.Code §§ 9–6.14:1 *et seq.* Both parties have moved for summary judgment, and a ruling on these motions is now appropriate.

When an individual applies for Medicaid benefits the Commonwealth evaluates the personal and real property owned by the applicant; if these resources exceed a prescribed amount, the applicant is ineligible to receive benefits. In considering an applicant's real property, Virginia applies certain limitations. A person's house, the adjoining lot, and outbuildings "essential to the dwelling" are not counted as resources. As for the remaining "non-exempt" property, the Commonwealth uses its assessed tax value as the sole evidence of the property's fair market value. A Medicaid applicant may not rely upon any other evidence, such as realtors' appraisals, to show the value of his property. If the tax value of the non-exempt property exceeds $1,500 for a single person or $2,250 for a married couple, the application is denied unless the applicant demonstrates that "the property cannot be sold, after a reasonable effort for sale has been made or if sale would involve unreasonable loss." Furthermore, in calculating property values the Commonwealth does not deduct costs which might be incurred if the applicant tried to sell his property, such

J. Barrett Jones, Virginia Legal Aid Society, Inc., Lynchburg, Va., Jill Hanken, Poverty Law Center, Richmond, Va., Martin Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., for plaintiffs.

J. G. Overstreet, Bedford, Va., for defendant Langford.

John H. Rupp, Robert Adams, Asst. Atty. Gen., Richmond, Va., for Com. of Virginia defendants.

William F. Watkins, Jr., Farmville, Va., for defendant Ruth J. Jones.

as attorney's fees and realtors' commissions.[1]

Each of the plaintiffs in this action applied for Medicaid benefits, but the Commonwealth denied their application because they owned too much real property. Of the four plaintiffs, only Pansy Adams has appealed her tax assessment in the state courts. Her appeal is now pending.

■ Plaintiffs challenge the following four particulars of Virginia's method of evaluating a Medicaid applicant's real property.

1. The tax assessed value of a parcel of land is the only evidence of fair market value considered by the Commonwealth. No other evidence of fair market value, such as appraisals by qualified realtors, is considered.

2. In determining the value of property, Virginia does not deduct the potential costs, such as realtor's commissions and attorney's fees, which would be incurred in selling the property.

3. To demonstrate that a parcel is unsaleable, an applicant must first make an actual effort to sell the property.

4. The Commonwealth fails to exempt from consideration all land which is contiguous to a homesite.

Plaintiffs contest each of these regulations on several statutory and constitutional grounds. For the reasons stated below, the court finds that the Commonwealth's policies concerning the assessment of real property resources are valid. Therefore defendants' motion for summary judgment will be granted.

## I.

Plaintiffs have requested certification of this cause as a class action pursuant to Rule 23(b)(2). Accordingly, the Court will certify the following plaintiff class:

All those elderly, blind or disabled persons who (1) applied for Medicaid benefits through the Virginia Medical Assistance Program; (2) at the time of their application met all the Medicaid eligibility requirements except for those requirements concerning the evaluation of real property; and (3) were denied Medicaid because they were found to have owned real property valued in excess of the applicable resource ceilings of $1,500 or $2,250. Plaintiffs Harris, James and Gladys Goldsby, and Pansy Adams represent this class.

The record contains sufficient evidence that the class is so numerous that joinder of its members is impracticable; that common questions of law or fact exist; that plaintiffs' claims are typical of the claims of the class; and that each plaintiff is an adequate representative of the designated class. Furthermore, defendants have acted on grounds generally applicable to the class.

---

1. These procedures are set forth in the Supplement to Attachment 2.6c of the State Plan for Medical Assistance. In pertinent part, the supplement states

The current market value of real property is determined by ascertaining the assessed value and applying to it the local assessment rate.

The following resource limitations apply to property owned by the Medicaid family unit:

a. *Real Property*

(1) *Home Ownership*—Ownership of a dwelling occupied by the applicant as his Home does not affect eligibility. A home means the house and lot, including adjoining land used for a vegetable garden and/or for outbuildings essential to the dwelling. It does not include land and outbuildings used for farming purposes.

(2) *Income Producing Property Other than the Home* does not affect eligibility if the individual's equity in the property does not exceed $6,000 and the property produces a net annual return to the applicant/recipient of at least 6 percent of the equity .... Where the property must be counted because the equity exceeds $6,000 or because the net annual return to the applicant/recipient is less than 6 percent of equity, the value is a countable resource.

(3) *Other Real Property*—Ownership of such property precludes eligibility unless the market value of the property, if added to the personal property, does not exceed the allowable amount of personal property that may be retained as a liquidable asset, or the property cannot be sold, after a reasonable effort for sale has been made or if sale would involve unreasonable loss.

## II.

Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396a *et seq.* If a state chooses to participate in the program, the federal government will reimburse the state for a portion of the costs of medical treatment for persons with limited income and resources. Federal law, as embodied both in the Social Security Act and in regulations promulgated under the Act by the Secretary of Health and Human Services, limits the eligibility criteria which states may employ in administering their Medicaid programs. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). In particular, 42 U.S.C. § 1396a(a)(17) provides:

> A State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient [and] . . . (C) provide for reasonable evaluation of any such income and resources.

A state plan must also specify the conditions of eligibility applied by the state. 42 C.F.R. § 435.10(b) [1981]. In addition to these requirements, which apply to all state Medicaid programs, Virginia belongs to a sub-group of states which must comply with other requirements.

In 1972 Congress revised the Social Security Act and created a new program, Supplemental Security Income for the Aged, Blind, and Disabled (SSI), which gave the federal government the responsibility not only for partially funding payments but also for setting eligibility standards. 42 U.S.C. § 1381 *et seq., Pub.L.* 92–603, 86 Stat. 1465 (1972). The SSI standards of need were more liberal than those used by some states under the previous state-run programs, and thus SSI confronted these states with the possibility of providing Medicaid assistance to a much larger number of persons. "[I]n order not to impose a sub-stantial fiscal burden on these States" or "discourage them from participating in Medicaid," Congress created the "§ 209(b) option". S.Rep.No. 553, 93d Cong., 1st Sess., 56 (1973). By exercising this option a state could ignore the more liberal SSI Medicaid eligibility standards and provide Medicaid assistance only to those persons who would have been eligible for the state Medicaid plan in effect on January 1, 1972. 42 U.S.C. § 1396a(f). Virginia chose to exercise the § 209(b) option. Therefore the Commonwealth allegedly continued to apply the same eligibility standards to aged, blind, and disabled applicants for Medicaid, as it had done on January 1, 1972. As a § 209(b) state, however, Virginia cannot use eligibility criteria which are more restrictive than those in effect on January 1, 1972, or no more liberal than those applied under the SSI program. 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121(b)(1).

In evaluating the standards used by Virginia to consider the real property owned by Medicaid applicants, the Court is aware that Title XIX grants states great latitude in devising and implementing reasonable eligibility standards. *See, e.g.; Norman v. St. Clair,* 610 F.2d 1228, 1240 (5th Cir. 1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). Congress, however, also delegated broad authority to the Secretary to promulgate Medicaid eligibility standards. *See Schweiker v. Gray Panthers,* 101 S.Ct. at 2640. Not only does the complexity of the Social Security Act require deference to the Secretary's regulations, but the Act itself authorizes the Secretary to prescribe regulations defining the income and resources available to a Medicaid applicant. *Id.; see* 42 U.S.C. § 1396a (a)(17)(B). Furthermore, § 1396a(a)(17) requires that states promulgate "reasonable standards" for determining Medicaid eligibility. Elaborating upon this phrase, the House Ways and Means Committee stated that

> the State plan must include such safeguards as may be necessary to assure that eligibility . . . will be determined . . . in a manner consistent with simplicity of administration and the best inter-

ests of the recipient. This provision was included in order to provide some assurance that the State will not use unduly complicated methods of determining eligibility which have the effect of delaying in an unwarranted fashion the decision on eligibility for medical assistance.... [U]nder this provision the States will be eliminating unrewarding and unproductive policies & methods of investigation....

H.R.Rep.No.213, 89th Cong., 1st Sess., 66 (1965). Thus the states enjoy some flexibility in administering their Medicaid plans, but the Social Security Act, its legislative history, and federal regulations limit this flexibility.

### III.

Plaintiffs contend that the Commonwealth's exclusive reliance on tax assessments as evidence of fair market value violates several statutory provisions of Title XIX of the Social Security Act. In particular, plaintiffs assert that the exclusive use of tax assessments contravenes portions of the statute which require that Virginia and other states participating in the Medicaid program (a) "provide for reasonable evaluation" of income and resources, (b) consider only "available" resources in evaluating a Medicaid applicant's eligibility, (c) apply eligibility standards no more restrictive than those applied by the state as of January 1, 1972, (d) set out in the State Medicaid Plan the eligibility criteria which are more restrictive than those used by the federal government in its SSI program, and (e) provide a fair hearing to applicants whose application has been denied. The Court finds, however, that these arguments lack merit and that the Commonwealth's reliance on tax assessments is valid.

### A.

■ In evaluating whether a Medicaid applicant qualifies for benefits, each partici-

pating state may determine an applicant's financial need using only "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B). Plaintiffs contend that the Commonwealth's exclusive reliance on tax assessments and its refusal to accept other evidence of property values violate the statutory requirement that Medicaid authorities consider only available resources in evaluating an application for Medicaid. They argue that, as a matter of law, tax assessments consistently assign values to real property which are higher than the actual fair market value. Thus Virginia's use of the assessments in its Medicaid program creates a conclusive but erroneous presumption by equating tax assessments with fair market value.

The language of the statute and the Secretary's accompanying regulations offer little aid in resolving this issue. Although Congress has explicitly delegated to the Secretary of Health and Human Services broad authority to issue regulations defining eligibility requirements, no regulation promulgated by the Secretary defines the word "available." [2] At one time the applicable regulations did state that only "actually available" resources should be considered, but in 1977 while amending these regulations the Secretary deleted the word "actually." [3] Furthermore, no federal regulation explicitly prescribes how states should determine the fair market value of a Medicaid applicant's real property.

The legislative history of § 1396a(a)(17)(B) elaborates generally upon Congress' intentions regarding the term "available." Referring to § 1396a(a)(17)(B), the Senate Report on the Social Security Amendments of 1965, Pub.L.No.89–97, 79 Stat. 344 (1965), states in pertinent part,

---

**2.** Although plaintiffs contend that 42 C.F.R. §§ 435.734 and 435.823 require that only "actually available" resources be counted, these regulations merely state that resources should be "available."

**3.** *Cf.* 45 C.F.R. § 248.21(a)(2)(i) [1972] and 42 C.F.R. § 448.3(b)(1) [1977] with 42 C.F.R. §§ 435.600 to 435.845 [1981].

Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary), are actually available to the applicant or recipient. . . . Income and resources taken into account, furthermore, must be reasonably evaluated by the States. These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available. Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual.

S.Rep.No.404, 89th Cong., 1st Sess., 78 (1965), *reprinted in* U.S.Code & Admin. News 1965, pp. 1943, 2018; *accord,* H.R.Rep. No.213, 89th Cong., 1st Sess., 67 (1965). Thus Congress seems to have intended that States not impute to individuals resources which are in fact not available.

Pursuant to § 1396a(a)(17)(B) and other statutes using the word "available," however, courts have often invalidated regulations which conclusively impute ownership of a resource at a certain value to public assistance applicants. For example, to impute the full market value of a home without first deducting the outstanding mortgage balance is to consider resources which are unavailable. *National Welfare Rights Organization v. Mathews,* 533 F.2d 637 (D.C.Cir.1976); *Green v. Barnes,* 485 F.2d 242 (10th Cir. 1973); *see also Oldham v. Ehrlich,* 617 F.2d 163 (8th Cir. 1980). Life insurance policies must be evaluated at their cash surrender value rather than their face value. *Wilczynski v. Harder,* 323 F.Supp. 509 (D.Conn.1971). And regulations assuming that property transferred by an applicant is still available to pay medical bills are invalid. *Dokos v. Miller,* 517 F.Supp. 1039 (N.D.Ill.1981); *Buckner v. Maher,* 424 F.Supp. 366 (D.Conn.1976), *aff'd,* 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977).

A review of Virginia law pertaining to tax assessments discloses no procedural defect that conclusively results in the over valuation of real property. Local city and county governments in Virginia must assess property at fair market value. Va.Const. Art. X, § 1; *Fairfax County v. Leasco Realty, Inc.,* 221 Va. 158, 166, 267 S.E.2d 608 (1980). If a city or county assesses a person's property at too high a value, the individual may appeal the assessment to the local commissioner of revenue or to the state courts. Va.Code §§ 58–1141, *et seq.* Although there is a presumption in favor of the accuracy of the tax assessment, a taxpayer may rebut the presumption by offering evidence of the property's fair market value. *Leasco Realty, Inc.,* 221 Va. 158, 267 S.E.2d 608.

Given these principles of Virginia law, tax assessments appear to approximate fair market value. Indeed, tax assessments by Virginia localities often under value property. *See Southern Ry. v. Virginia,* 211 Va. 210, 215, 176 S.E.2d 578, 581 (1978). And although the assessments made on the land owned by plaintiffs may be too high, plaintiffs have produced no evidence of an instance where a locality has systematically assessed property at values above the fair market value.[4] In addition, the tax assess-

---

4. Although plaintiffs have introduced evidence that Virginia has overvalued their individual parcels of real property, such evidence is not dispositive. Section 1396a(a)(17) only requires states to use reasonable standards that consider available resources. The statute does not guarantee each Medicaid applicant that a state will not make a mistake in his individual case. Thus, to comply with the availability requirement Virginia must use a procedure that will, in most cases, fairly and accurately estimate the fair market value of real property. For plaintiffs to prevail there must be a defect in the valuation procedure used by Virginia as well as error in the decision reached in plaintiffs' individual cases.

Another consideration compels the use of this analysis. If a disappointed Medicaid applicant could prevail by showing only that the State had overvalued his individual property, then federal courts potentially would have to review every factual decision made by State Medicaid agencies. Subject to the bounds of due process, factual conclusions reached by a State agency lie within the agency's discretion and authority; they are not the substance of a

ment procedures specifically provide a means for individuals to appeal incorrect assessments by introducing evidence of fair market value. Thus tax assessments are generally no more than fair market value, and, when a mistake is made, a property owner possesses a remedy for obtaining a lower assessment. For these reasons the Court concludes that the Commonwealth's reliance on tax assessments as the sole evidence of value does not take into account resources which are unavailable to Medicaid applicants.[5]

Plaintiffs correctly point out, however, that Virginia law requires that tax assessments be uniform throughout a locality. Va.Const. Art. X, § 2. In certain instances uniformity takes precedence over fair market value:

> [C]onsiderations of uniformity should not be divorced from the concept of fair market value; the two constitutional principles must be read and construed together. But if it is impractical or impossible to enforce both the standard of true value and the standard of uniformity, the latter provision is to be preferred as the just and ultimate end to be attained.

*Fairfax County v. Leasco Realty, Inc.,* 221 Va. 158, 267 S.E.2d 608 (1980). Thus when a Medicaid applicant presents evidence that local tax assessors have overvalued his property for the sale of uniformity, perhaps then the Commonwealth should allow the applicant to introduce other evidence of fair market value. But the facts of this case do not present such a circumstance. The record contains no evidence that the local tax assessors who examined plaintiffs' properties, or the assessors of any other locality, have emphasized uniformity over fair mar-

ket value. Contrary to plaintiffs' contention, the Court cannot conclude that tax assessors overvalue land in many cases merely because, as a theoretical matter, principles of uniformity take legal precedence over standards of fair market value in certain circumstances. In the absence of evidence that this principle of Virginia law has in fact influenced the erroneous assessment of plaintiffs' lands, or those of any other Medicaid applicant, plaintiffs have not shown that the Commonwealth's reliance on tax assessments is illegal in this regard.

Plaintiffs also contend that the imprecision of tax assessments renders the Commonwealth's policies invalid. This argument, however, has merit only if plaintiffs can demonstrate that tax assessments are generally higher than fair market value. The record contains no such evidence. Nor is there any evidence that assessments conducted by Virginia Medicaid officials could be more accurate or precise than those made by local tax assessors. Merely shifting the responsibility for the valuation of real property from local authorities to state Medicaid personnel would not necessarily, or even probably, result in more precise assessments. Finally, plaintiffs have failed to show that the state administrative and judicial remedies for correcting incorrect tax assessments are inadequate. There appears to be no better way, and plaintiffs have suggested none, to establish a precise and fair value for real property than to provide for a full evidentiary proceeding before an impartial tribunal. Plaintiffs possess such a remedy through the state forums for appealing their tax assessments.

---

federal cause of action. Therefore the issue here is whether the manner in which Virginia values the real property owned by Medicaid applicants precludes applicants from showing that their tax assessments are greater than the fair market value of their property. For the purpose of resolving this issue on defendants' motion for summary judgment, the Court will assume that defendants' tax assessments are greater than the fair market value of their property.

**5.** Indeed, plaintiffs' own evidence tends to support the use of tax assessments. The affidavit of James R. Johnston, a professional appraiser, states that tax assessments are "generally close" to fair market value. Although Johnston also states that there is room for error, he offers no specific evidence of an instance where tax assessors have systematically overvalued land or where the remedies for appealing tax assessments provided an inadequate opportunity to present other evidence of fair market value.

For these reasons the Court concludes that Virginia's exclusive reliance on local tax assessments properly values real property under 42 U.S.C. § 1396a(a)(17)(B).

### B.

Plaintiffs also challenge the use of tax assessments on the ground that it evaluates the resources of Medicaid applicants in an unreasonable manner, in violation of 42 U.S.C. § 1396a(a)(17)(C). *See also* 42 C.F.R. § 435.851(a) [1981]. Not only is the Commonwealth's reliance on assessments unreasonable because it ignores the more precise and competent opinions of realtors and other experts, plaintiffs claim, but also because tax assessments are used inconsistently by Medicaid officials. To illustrate their point, plaintiffs note that Virginia accepts realtors' opinions as to whether land is unsaleable, but not as to the value of the land. When an applicant has transferred land at a low price in order to qualify for Medicaid, the price received need only "approximate" the tax assessed value of the property. Plaintiffs also assert that on several occasions the Commonwealth has rejected tax assessments as evidence of fair market value, contrary to its avowed policy.

States participating in the Medicaid program must apply "reasonable standards" which "provide for reasonable evaluation" of a Medicaid applicant's income and resources. *See* 42 U.S.C. § 1396a(a)(17). As noted previously, by "reasonable standards" Congress meant procedures which are not "unduly complicated," "unrewarding," or "unproductive." *See* H.R.Rep.No.213, 89th Cong., 1st Sess., 66 (1965). On the other hand, a "reasonable evaluation" of resources is one of two provisions in § 1396a(a)(17) "designed so that the States will not . . . overevaluate income and resources which are available." *Id.* at 67; S.Rep.No.404, 89th Cong., 1st Sess., 78 (1965), *reprinted in* U.S.Code Cong. & Admin.News 1965, pp. 1943, 2018. These legislative guidelines suggest that a reasonable evaluation of resources will strike a balance between administrative simplicity and the accurate appraisal of resources. On the

basis of these principles the Court concludes that Virginia's use of tax assessments provides a reasonable evaluation of resources owned by Medicaid applicants.

The Commonwealth's exclusive reliance on tax assessments avoids duplicative litigation. If a potential Medicaid applicant is dissatisfied with his assessment, Virginia law provides him with the procedures and a forum to challenge his assessment. The Medicaid rule which plaintiffs are challenging capitalizes on this procedure and requires that an applicant contest his assessment in state court or before the local commissioner of revenue. Thus a Medicaid applicant kills two birds with one stone by appealing his tax assessment: He can lower his taxes, and also perhaps qualify for Medicaid. To reject the Commonwealth's policy would compel Medicaid officials to make lengthy investigations and make quasi-judicial decisions about real estate values, thereby duplicating the efforts of local tax assessors and those who appeal their assessments.

The state Medicaid tax assessment rule also appears reasonable because when appealing an assessment taxpayers, including prospective Medicaid applicants, may introduce any competent evidence of fair market value. The assessment is established only after a hearing and consideration of all the evidence presented; it is not a figure plucked from the air. Therefore it seems reasonable for Medicaid officials to rely on the assessment as evidence of fair market value. Furthermore, apart from asserting that as a theoretical matter principles of uniformity sometimes take precedence over fair market value in determining assessments, plaintiffs have not pointed to any defects or inadequacies in the procedure used to set assessments. Given that the state already provides Medicaid applicants with one set of procedures to determine the value of their land, it is not necessary that the Medicaid program also provide an additional duplicative set of procedures.

Plaintiffs nevertheless point to alleged inconsistencies in Virginia's use of tax assessments as evidence of the unreasonable-

**1024**

ness of the policy. For instance, although Virginia disregards realtors' opinions of the value of real property, allegedly the Commonwealth does accept them in deciding whether a property is unsaleable. Or in deciding whether an applicant fraudulently transfers property for less than fair value, Medicaid officials ask whether the price of the transferred property approximated fair value. Virginia State Department of Welfare Medicaid Manual § 301.1(D)(3)(d) (hereinafter cited as Va. Manual).

These and other instances of inconsistent uses of tax assessments, however, do not justify the conclusion that the Commonwealth's policy is unreasonable. As noted previously, states possess great flexibility in administering their Medicaid programs. *Norman v. St. Clair,* 610 F.2d at 1240. As long as state regulations are sufficiently precise and clear so that an applicant is not misled or improperly confused, Virginia's decision to rely on tax assessments in some instances and not others rests with the discretion of state officials. Mere inconsistencies in the use of tax assessments do not render the Commonwealth's policy unreasonable.

Yet plaintiffs argue that not only are Virginia's Medicaid regulations inconsistent, but that in practice Medicaid officials have occasionally accepted other evidence than tax assessments as proof of fair market value. The three cases produced by plaintiffs, however, are insufficient to show that Virginia's regulations were applied so inconsistently that their application to plaintiffs' cases was unreasonable. *See* Plaintiffs' Exhibits O,P (3d ¶), and Q (filed Sept. 23, 1981). In their memorandum in support of class certification, plaintiffs acknowledged that during the past ten years Virginia has denied Medicaid benefits to almost 500 persons because they possessed to much real property. Three cases from 500 does not establish a pattern or practice of accepting additional evidence of fair market value. Absent further proof that Virginia arbitrarily denied plaintiffs' applications, the present use of tax assessments is a reasonable policy for evaluating real property.

C.

■ Plaintiffs next contend that the tax assessment rule violates 42 U.S.C. § 1396a(f) because it is a more restrictive eligibility criterion than that in effect on January 1, 1972. *See also* 42 C.F.R. §§ 435.121(b)(1) and 435.845(a). Section 1396a(f) and the applicable regulations issued by the Secretary require that § 209(b) states such as Virginia use eligibility criteria which are no more restrictive than those in effect on January 1, 1972, and no more liberal than the criteria applied under the federal SSI program. *Id.* As of January 1, 1972, Virginia applied the following regulation in valuing real property:

> Ownership of any real property precludes eligibility ... unless the market value of the property, if added to the personal property, does not exceed the allowable amount of personal property.

Va. Manual § 502.4(b)(1)(c) [1970]. The present regulation expressly defines market value as the tax assessed value.

As a threshold issue § 1396a(f) does not apply to the Commonwealth's use of tax assessments because the tax assessment rule is not a substantive eligibility criterion. Although the definition of an eligibility criterion is uncertain, the tax assessment rule appears to be no more than an evidentiary rule. It does not define the level of resources which disqualify an applicant nor does it define the kinds of resources which are considered. Instead it provides a means for measuring the value of real property. *Cf. Fabula v. Buck,* 598 F.2d 869, 874 (4th Cir. 1979) (transfer of assets rules are substantive eligibility criteria). As a practical matter the only difference between the present rule and a rule allowing applicants to present additional evidence of fair market value is that the present rule compels Medicaid applicants to appeal their tax assessments and litigate the issue of fair market value in that fashion rather than litigate the issue in Medicaid proceedings. Thus the tax assessment rule is an administrative regulation which simplifies the pro-

cessing of Medicaid applications, but does not by itself declare who is eligible or ineligible for Medicaid. Since the Commonwealth's use of tax assessments is merely an evidentiary rule, there is no violation of § 1396a(f) and the Secretary's accompanying regulations.

Even if the tax assessment rule were a substantive eligibility criterion, however, the record discloses that the Commonwealth's present policy differs little from its 1972 policy. The Commonwealth has produced affidavits by two Medicaid officials which state that market value has always been construed as tax assessed value since 1965 and the inception of the Medicaid program. *See* Defendants' Exhibits 1 and 9 (filed Oct. 15, 1981).[6] Plaintiffs, however, aver that in two cases the State Medicaid Board of Appeals may have considered evidence of market values other than tax assessments. Neither of these cases is adequate, however, to rebut defendants' statements that since 1965 Medicaid officials have considered only tax assessments as evidence of market value.

In the first Medicaid case cited by plaintiffs, the Board of Appeals recommended that a realtor "evaluate the property for correct value."[7] The issue before the Board nevertheless seems to have been whether the land could be sold "due to [its] location, desirability and limited access." Thus it appears that the Board was actually concerned with the saleability of the property, not its market value. As for the second case, the Board minutes state that "it appears the land is assessed at an unusually high amount," yet the minutes also state explicitly that the Board reached its decision because the land was income producing property. The assessed value of the property was not the basis for the Board's decision. Thus neither of these two Medicaid appeals adequately rebut defendants' evidence that as of January 1, 1972, Medicaid officials accepted only tax assessments as evidence of fair market value. Indeed, two cases from a multitude of Medicaid applications, regardless of their result and the basis for their decision, are insufficient evidence that the Commonwealth consistently accepted evidence of fair market value other than tax assessments.

Plaintiffs persist by arguing that defendants' affidavits indicate Virginia followed a practice in 1972 which was contrary to its own regulations and therefore was invalid. If the practice were invalid in 1972, the

---

**6.** The two affidavits were filed by senior Medicaid officials who have a longstanding familiarity with Virginia's Medicaid regulations and policies. Plaintiffs' only response to these affidavits characterizes them as "speculations or assumptions expressed by defendants' attorneys to explain the intent of the Appeals Board." Plaintiffs' Second Memorandum, at 11 (filed Jan. 8, 1982). The Court disagrees. Defendants' affiants spoke from personal knowledge, and their statements are competent evidence to explain the brief one-paragraph summaries of the Board's decisions as well as to elaborate upon the manner in which the written Medicaid policies were implemented. Plaintiffs have introduced no evidence to impugn the credibility of these affiants' explanations.

**7.** The two cases supplied by plaintiffs are contained in the minutes of the Medicaid Appeals Board. The minutes are the only remaining records since the Commonwealth destroyed all hearing records in 1977.

The minutes of both cases read as follows:
1. [Applicant] has resources in the form of 23 acres of land. It was not established that this land could be sold due to location, desirability and limited access. Also it was stated that this land would not percolate, making it unfeasable to accommodate indoor bathroom facilities.

The Appeals Board recommended that this case be continued until a licensed realtor evaluates the property for correct value. The local Health Department will be requested to check the soil for percolation.

2. The agency cancelled [applicant's] Medicaid case because of excess resources (property) and the transfer of personal property (an automobile).

This appellant has about 10 acres of land and he raises hay on approximately three acres. Because of the location of the land and the lack of access by road, it appears the land is assessed at an unusually high amount.

The Appeals Board reversed the Agency because the property is income producing and the amount of return is a reasonable amount for the land in question. Because of the condition and age of the car in question, the Appeals Board did not believe it could be considered as a resource or that a cash value could be assessed.

Commonwealth may not now rely on it to justify its present regulation under 42 U.S.C. § 1396a(f). The Commonwealth's 1972 practice and procedures do not, however, appear to have departed from its written standards. Rather, Virginia reasonably interpreted its own 1972 regulations in order to implement them. The written policy stating that real property should be assessed at market value does not give any guidance as to how to assess the property. The Commonwealth possesses flexibility and discretion in administering its Medicaid program and interpreting its own regulations. *See New York State Dept. of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973). The Court cannot conclude, from the present record, that the manner in which Virginia interpreted and then applied its 1972 regulations was unreasonable.

### D.

■ Plaintiffs also contend that the tax assessment rule is not included in the State Medicaid Plan as a more restrictive condition of eligibility. Where a state plan fails to list the more restrictive conditions, the SSI provisions control. *See* 42 C.F.R. §§ 435.10, 435.121. Contrary to plaintiffs' contention, however, the Supplement to Attachment 2.6c of the Virginia State Plan for Medical Assistance does set forth the tax assessment rule. Furthermore, as previously stated the tax assessment rule is not an eligibility criterion and therefore need not be listed in the State Plan as an eligibility criterion.

### E.

■ As their final ground for challenging the use of tax assessments as the sole evidence of fair market value, plaintiffs assert that the Commonwealth's exclusive use of assessments deprives them of their right to a fair hearing in violation of 42 U.S.C. § 1396a(a)(3), and in turn the due process clause of the fourteenth amendment.

With regard first to the statutory question, Section 1396a(a)(3) requires Virginia to grant "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance . . . is denied. . . ." 42 U.S.C. § 1396a(a)(3). The Secretary defines the general elements of a fair hearing at 42 C.F.R. § 431.205(d):

> The hearing system must meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), and any additional standards specified in this subpart.

At 42 C.F.R. § 431.242 the Secretary particularizes these additional standards:

> The applicant or recipient, or his representative, must be given an opportunity to—
>
> (a) Examine at a reasonable time before the date of the hearing and during the hearing:
>
> (1) The content of the applicant's or recipient's case file; and
>
> (2) All documents and records to be used by the State or local agency at the hearing;
>
> (b) Bring witnesses;
>
> (c) Establish all pertinent facts and circumstances;
>
> (d) Present an argument without undue interference; and
>
> (e) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

Plaintiffs argue that the tax assessment rule denies them a fair hearing because it prevents them from establishing all pertinent facts and circumstances and from refuting all the evidence presented, in violation of 42 C.F.R. §§ 431.242(c) and 431.-242(e).

It is uncontroverted that at his hearing each plaintiff presented evidence that the fair market value of his property was lower than the tax assessment. The Commonwealth did not consider this additional evidence and denied plaintiffs' applications for benefits.

The fair hearing requirements of § 1396a(a)(3) offer procedural guarantees to ensure Medicaid applicants a thorough, complete review of their application. The

statutory right to a fair hearing does not, however, define the issues to be addressed in the hearing. In particular, this Court has held that the tax assessment rule is a valid evidentiary presumption under § 1396a(a)(17) such that the Commonwealth may properly refuse to consider additional evidence of fair market value. The Secretary's regulations require that Virginia provide an opportunity to "establish all *pertinent* facts and circumstances." 42 C.F.R. § 431.242(c) [emphasis supplied]. What is "pertinent" does not arise independently from the fair hearing requirements of § 1396a(a)(3). Rather, other portions of the Social Security Act define and limit the substance of eligibility criteria to be used by the States. *See, e.g.,* 42 U.S.C. § 1396a(a)(17). Plaintiffs have pointed to no case or legislative authority which indicates that § 1396a(a)(3) creates substantive limitations on State Medicaid rules, and the Court declines to construe § 1396a(a)(3) in that way.

Furthermore, plaintiffs still have two opportunities to rebut the tax assessed value of their property. First, even though plaintiffs could not introduce additional evidence of fair market value at their Medicaid hearings, they nevertheless possess state remedies for appealing their tax assessment. These remedies provide plaintiffs with a full and fair hearing at which additional evidence of fair market is admissible. Va. Code §§ 58–1141, *et seq.; Fairfax County v. Leasco Realty, Inc.,* 221 Va. 158, 166, 267 S.E.2d 608 (1980). Second, Virginia Medicaid regulations provide that Medicaid officials will disregard the tax assessment if the property cannot be sold or if sale of the property would result in an unreasonable loss. *See* note 1. In this way a Medicaid applicant may persuade Virginia to accept additional evidence of fair market value.

Many of these same reasons support the validity of the tax assessment rule under the due process clause. Viewing the Social Security Act and the Virginia regulations which administer the act as a whole, the Court concludes that these statutes and regulations create a legitimate entitlement and expectancy in Medicaid benefits for appli-

cants who claim to meet the eligibility requirements. *See Griffeth v. Detrich,* 603 F.2d 118, 120–21 (9th Cir. 1979), *cert. denied,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980). Although plaintiffs therefore merit some degree of constitutional protection regarding the determination of their Medicaid eligibility, "due process is flexible, and call for such procedural protection as the situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). To determine the appropriate process which plaintiffs merit requires a balancing of three competing interests:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [citation omitted]

*Id.* at 335, 96 S.Ct. at 903; *accord, Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Virginia need not give plaintiffs additional due process by accepting evidence of fair market value other than tax assessments. Of course the private interest affected is the right to Medicaid benefits. Many individuals depend on these benefits for essential medical treatment. Nevertheless the Commonwealth relies on tax assessments for administrative simplicity in processing Medicaid applications. By expecting prospective Medicaid applicants to fully exercise their rights of appeal and obtain a property assessment equal to fair market value, Virginia avoids a second duplicative and perhaps lengthy inquiry into property values. Also, the use of tax assessments as the exclusive evidence of fair market value offers little risk that property will be valued above fair market value, nor would requiring the consideration of additional evidence provide much additional protection.

In allowing for appeals of tax assessments, Virginia law already gives Medicaid applicants a full and fair hearing at which they may present competent evidence of fair value. To require a second hearing before Medicaid authorities on the same issue offers no additional procedural protection; nor have plaintiffs established, under the facts of this case and as discussed previously, that tax assessments lead to an erroneous deprivation of benefits.

In sum, under 42 U.S.C. § 1396a(a)(17) and the Fourteenth Amendment Virginia justifiably excludes evidence of fair market value other than tax assessments. The exclusion of such evidence does not deprive plaintiffs of a fair hearing.

### IV.

■■ Virginia does not deduct the estimated costs of selling a parcel of land in determining its fair market value. Plaintiffs contest this policy on two grounds. First, plaintiffs argue that the failure to deduct the costs of sale takes into account unavailable resources, in violation of 42 U.S.C. § 1396a(a)(17)(B). Second, plaintiffs contend that this policy unlawfully discriminates between them and other Medicaid applicants, thereby denying them equal protection under the law. Neither of these arguments, however, justifies invalidating the Commonwealth's policy.

Assuming that Virginia's refusal to deduct the costs of sale is an eligibility criterion such that § 1396a(a)(17)(B) does apply, the Court notes that Congress delegated to the Secretary broad authority to promulgate Medicaid eligibility requirements. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). In particular, 42 U.S.C. § 1396a(a)(17)(B) expressly authorizes the Secretary to prescribe regulations which define the income and resources available to a Medicaid applicant. Given this statutory delegation of authority,

> The Secretary's definition of the term "available" is "entitled to more than mere deference or weight." *Batterton v. Francis,* 432 U.S., [416] at 426 [97 S.Ct. 2399 at 2406, 53 L.Ed.2d 448]. Rather, the Secretary's definition is entitled to "legislative effect" because, "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.,* at 425 [97 S.Ct. at 2405]. Although we do not abdicate review in these circumstances, our task is the limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious. *Id.* at 426 [97 S.Ct. at 2406].

*Gray Panthers,* 101 S.Ct. at 2640.

As of this date the Secretary has not prescribed standards which require states to deduct the expenses incurred in selling real property. The availability requirement of § 1396a(a)(17)(B), however, is but one portion of a complex statute and should be interpreted in a manner consistent with other provisions of the Social Security Act. *Herweg v. Ray,* —— U.S. ——, 102 S.Ct. 1059, 1067, 71 L.Ed.2d 137 (1982). When the availability provision is viewed in conjunction with § 1396a(f) and the Secretary's accompanying regulations, Virginia's refusal to deduct the costs of selling real estate appears to be valid.

As a § 209(b) state, Virginia may not impose eligibility criteria which are either more restrictive than its 1972 policies, or more liberal than the corresponding SSI regulations. 42 U.S.C. § 1396a(f); 42 C.F.R. §§ 435.121(b)(1) and 435.845(e)(1). In this instance to require Virginia to deduct sales expenses from the market value of an applicant's property would result in an eligibility rule more liberal than the corresponding SSI regulation. The pertinent SSI provision authorizes the deduction of "encumbrances" from market value, but does not allow the deduction of sales costs. 20 C.F.R. § 416.1201(c)(2). Furthermore, "encumbrance" has never been interpreted as referring to the costs of selling property, but instead appears to refer only to mortgages or liens on the property. *See Nat'l Welfare Rights Organization v. Mathews,* 533 F.2d 637, 647 (D.C.Cir.1976); *Green v.*

*Barnes,* 485 F.2d 242, 243 (10th Cir. 1973); Defendants' Exhibit 8, affidavit of Cornelius Holmes (filed Oct. 15, 1981). To read the Secretary's regulations regarding available resources consistently with those governing § 209(b) states, the Court must conclude that Virginia need not deduct the costs of selling property. To hold otherwise would lead to a direct conflict with § 1396a(f), because Virginia would then use an eligibility criterion more liberal than the corresponding SSI provision.

Plaintiffs' equal protection claim asserts that Virginia fails to treat all Medicaid applicants who own real property in an equal manner. Although in general the Commonwealth refuses to deduct the costs of selling real property, Virginia does allow joint owners of property to deduct the cost of a partition suit from the value of the property. The applicable regulation reads as follows:

> Property in the form of an interest in an undivided estate is to be regarded as an asset unless it is considered unsaleable for reasons other than being an undivided estate. An heir can initiate a court action to partition. However, if such an action would not result in the applicant/recipient securing title to property having value substantially in excess of the cost of the court action, the property would not be regarded as an asset.

Supplement to Attachment 2.6c of the State Plan for Medical Assistance. Plaintiffs assert that it is illegal to allow joint owners of property to deduct the cost of liquidating their property, but not to allow other property owners to deduct the cost of liquidating their property.

Virginia's distinction between joint property owners and other real property owners does not violate the equal protection clause of the fourteenth amendment as long as the classification has some "reasonable basis." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). In this instance a reasonable basis supports Virginia's policy of distinguishing between owners of real property.

Virginia permits the deduction of partition costs in order to avoid encouraging needless litigation. If a Medicaid owner's interest in a parcel of land does not substantially exceed the cost of a partition suit, to compel the applicant nevertheless to file suit would merely enrich attorneys and result in little cognizable gain for the applicant. Furthermore, contrary to plaintiffs' assertion, Virginia's policy towards partition costs is consistent with its policies regarding real property owned by a single owner. The partition suit policy does not require partitioning for its own sales; similarly, the Commonwealth does not require an applicant to sell his property at a "substantial loss." *See* note 1. Both policies avoid requiring an applicant to dispose of property at firesale prices; instead they encourage the sale or partitioning of property only if it would result in a fair net return for the applicant. Thus, the Commonwealth's refusal to deduct the costs of sale incurred by single property owners rests upon a rational policy which compels the disposal of real property only if it results in a fair return to the Medicaid applicant. For this reason the Commonwealth has not denied plaintiffs equal protection under the Constitution.

## V.

The third policy challenged by plaintiffs provides that real property will be classified as unsaleable only after the Medicaid applicant makes a "reasonable effort" to sell the property. Plaintiffs contend that this rule is invalid because it is more restrictive than the corresponding regulation applied as of January 1, 1972, and because it is so vague in its present form that the lack of an articulable standard deprives plaintiffs of due process.

█ As noted previously, 42 U.S.C. § 1396a(f) prohibits § 209(b) states like Virginia from applying eligibility criteria which are more restrictive than the criteria in effect on January 1, 1972. 42 U.S.C. § 1396a(f); 42 C.F.R. §§ 435.121(b)(1) and 435.845(a). In January, 1972, Virginia used the following regulation:

Ownership of any other real property precludes eligibility unless property cannot be sold, or sale would involve undue monetary sacrifice. . . .

Va. Manual § 502.4(b)(1)(c) (1972). The same regulation now reads:

Other real property. Ownership of such property generally precludes eligibility. Exceptions to this are . . . (2) the property cannot be sold *after a reasonable effort for sale has been* made; or (3) the sale of such property would involve a substantial loss. . . . (Emphasis supplied).

In support of their argument, plaintiffs point out that the 1972 standard makes no reference to reasonable efforts to sell land. Moreover, in four cases between 1970 and 1972 the Medicaid Board of Appeals made an independent determination of saleability without inquiring whether the applicant had attempted to sell the property. See Plaintiffs' Exhibits AA, BB, and CC (filed Sept. 23, 1981). On the basis of these cases and the omission from the 1972 standard of any reference to reasonable efforts to sell the property, plaintiffs claim that Virginia's present policy is more restrictive than in 1972.

Although the present wording of the saleability standard specifically requires reasonable efforts to sell land, defendants' evidence [8] establishes that this change in wording merely makes explicit a standard which had formerly been applied implicitly. In other words, the Commonwealth has always required Medicaid applicants to show reasonable efforts to sell property; only after 1972, however, did Virginia spell out this requirement in writing. As for the four Medicaid appeals cases cited by plaintiffs, defendants' evidence indicates that each of these cases involved exceptional circumstances clearly showing that the property could not be sold because the applicable zoning restrictions prohibit building on the property or because no access to the property is available. Unless such exceptional circumstances exist, a reasonable effort to sell the property is necessary. *See* Defendants' Exhibits 1 and 9 (filed Oct. 15, 1981).

Plaintiffs have not introduced additional evidence to rebut or contradict defendants' evidence that, in practice, the Commonwealth has always required applicants to make a reasonable effort to sell their real property. Thus it remains uncontroverted that the present policy as written does not differ in substance from Virginia's policy in 1972. Therefore the Court concludes that the Commonwealth's present saleability regulations are not more restrictive than its 1972 regulations.[9]

Plaintiffs nevertheless assert that the lack of specific, written regulations has deprived them of due process. They point out that the Commonwealth has not defined "reasonable effort for sale," nor has it specified the two exceptional circumstances when an applicant need not attempt to sell the property because of zoning restrictions or inadequate access.

The lack of specific guidelines or policies for evaluating reasonable efforts to sell real property is fatal only if such an omission exceeds the standards of due process. In balancing the *Mathews v. Eldridge* interests in this context, several courts have further defined the interests at stake. The Seventh Circuit noted in *Carey v. Quern,* 588 F.2d 230, 232 (7th Cir. 1978), that

In the context of eligibility for welfare assistance, due process requires at least that the assistance program be administered in such a way as to insure fairness and to avoid the risk of arbitrary, decision making . . . . Typically this requirement is met through the adoption and implementation of ascertainable standards of eligibility.

To provide a meaningful hearing which rationally arrives at factual determinations, explicit written rules may be necessary.

---

**8.** Again, this evidence consists of two affidavits filed by senior Medicaid officials. *See* note 6.

**9.** In doing so, the Court notes that Virginia's 1972 practices were not contrary to its written regulation, but rather constituted a reasonable interpretation of them. *See* text at page 1024–1025.

*Davis v. Ball Memorial Hospital Ass'n*, 640 F.2d 30, 38 (7th Cir. 1980). Written regulations not only prevent arbitrary decision making, but they also enable the Medicaid applicant to prepare adequately for administrative hearings and aid judicial review. *See, e.g., Matlovich v. Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978); *White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976).

▇ Plaintiffs perhaps correctly assert that Virginia's regulations concerning "reasonable efforts for sale" are too general and unspecific. The Court declines to reach this issue, however, for at the present time plaintiffs lack the standing to allege that these regulations fall short of due process requirements. *See Klein v. Califano*, 586 F.2d 250, 261 (3d Cir. 1978) (*en banc*). The documents pertaining to plaintiffs' administrative appeals include realtors' opinions as to the value of their property, appeal briefs arguing that tax assessments were too high or that not enough land had been exempted from consideration, and summaries of the Board's decisions. Yet the record discloses no evidence that plaintiffs had attempted to sell their property or that their property was unsaleable because of zoning restrictions or a lack of access to the property. Thus plaintiffs lack the standing to complain that they were denied a fair hearing due to the absence of adequately written standards when they had not made, nor have they made, an effort to sell their property; plaintiffs never alleged, nor do they now, that their property is zoned or lacks access in such a way that, if precise written standards had been available, the standards would have applied to plaintiffs' cases. In short, the record contains insufficient evidence that Virginia's alleged imprecise definition of "reasonable efforts for sale" somehow prejudiced plaintiffs' interests. Absent proof that these unwritten standards might have served as a grounds for denying plaintiffs' applications for Medicaid benefits, their due process rights are not implicated.

Furthermore, since the policies plaintiffs are challenging were not the bases for the denial of their Medicaid applications, the Court cannot find that the Medicaid Board of Appeals may have acted arbitrarily because of the lack of written standards. Nor does it appear that plaintiffs were unable to prepare properly their administrative appeals, given that they did not attempt to sell their property, and that no zoning restrictions or a lack of access affect their property. And finally, the Court has not been hindered in reviewing the Board's decisions because the grounds for the decisions rest upon other regulations which are specific and written. Therefore, summary judgment as to this portion of plaintiffs' claims will also be granted to defendants.

## VI.

The fourth and final Medicaid policy contested in this action defines the manner in which Virginia classifies real property as exempt or non-exempt from being considered as a resource. Not all land owned by a Medicaid applicant is counted as a resource. The Commonwealth does not take into account an applicant's home residence and a portion of the land surrounding the home. The policy challenged here addresses how much of the surrounding land should be exempted and states, in pertinent part,

> Ownership of a dwelling occupied by the applicant as his home does not affect eligibility. A home means the house and lot, including adjoining land used for a vegetable garden and/or for outbuildings essential to the dwelling. It does not include land and outbuildings used for farming purposes.

Supplement to Attachment 2.6c of the State Plan for Medical Assistance.

Plaintiffs claim that this regulation is invalid because it is more restrictive than the corresponding policy applied in 1972, it was applied inconsistently without the aid of specific written standards so as to be unreasonable and deprive applicants of their due process rights to a fair hearing, and it was allegedly promulgated in violation of the Virginia Administrative Process Act, Va.Code §§ 9–6.14:1 *et seq.*

A.

In 1972 the Commonwealth used the following regulation to distinguish between exempt and non-exempt property:

Ownership of a dwelling occupied by the applicant as his home does not affect eligibility. A home is considered to be the house and lot or adjacent land, including a garden and outbuildings used in connection with the dwelling. It does not include land and outbuildings used for farming purposes.

Plaintiffs argue that Virginia's 1972 regulation exempted the home and all adjacent land unless the adjacent land was used for farming purposes. The Commonwealth, however, has introduced the affidavits of two Medicaid officials who state from personal knowledge that only adjacent property used in connection with the home or essential to the home has been exempted under the 1972 regulation and all corresponding regulations issued thereafter. Virginia never interpreted the 1972 regulation as exempting all adjacent land unless it was used for farming.

The Commonwealth's interpretation of its regulations merit great weight. *New York State Dept. of Social Services v. Dublin*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973). The record contains no evidence, and plaintiffs have introduced none, to suggest that in 1972 Virginia interpreted its regulation in the way plaintiffs suggest. Although the wording of the regulation has changed since 1972, defendants' evidence establishes that in substance Virginia's practices in 1982 are the same as in 1972.[10] Absent evidence to the contrary, the Court can only conclude that Virginia's present policy is not more restrictive than its 1972 policy, and therefore does not violate 42 U.S.C. § 1396a(f).

B.

In deciding the amount of property to exempt from consideration, Medicaid officials use only a broad general standard that exempts "the house and lot, including adjoining land used for a vegetable garden and/or for outbuildings essential to the dwelling. It does not include land and outbuildings used for farming purposes." Plaintiffs contend that the lack of additional specific written guidelines vests too much discretion with Medicaid officials and hinders Medicaid applicants' attempts to prepare for administrative hearings, in violation of the due process clause of the Fourteenth Amendment.

To recapitulate briefly, due process may require more specific written regulations depending upon the circumstances of each case. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976); *Carey v. Quern*, 588 F.2d 230 (7th Cir. 1978). Upon considering plaintiffs' interests, the need for more specific standards and the risk of an erroneous decision, and the interests of the Commonwealth, the Court finds that Virginia need not promulgate additional regulations to further define its classifications of property as exempt or nonexempt.

In this instance the Commonwealth's need to retain a measure of flexibility and discretion outweighs plaintiffs' interests in being able to refer to specific written regulations. Each parcel of land evaluated by Medicaid officials is different in size, the number of outbuildings, and its use. Land use varies greatly between rural and urban areas. Property considered adjacent to a rural home may not be similar to adjacent property in an urban area. Although defendants suggest the alternative of exempting one-half acre of land in all cases, they are reluctant to do so because land use varies greatly. *See* Defendants' Exhibit # 1.

On the other hand, plaintiffs contend that the Medicaid Appeal Board has inconsistently interpreted the adjacent land regulation and that its decisions are after inaccurate because the Board does not use surveys to determine the acreage to exempt. Plaintiffs have not, however, submitted any evidence nor do they argue in their briefs that the Board inaccurately or inconsistently ap-

---

**10.** For a discussion of the weight given to these affidavits, see note 6.

plied the regulation to them. Instead plaintiffs cite four cases from the minutes of the Appeals Board as being inconsistent or inaccurate. Four cases out of the hundreds decided by the Board and by Medicaid personnel do not establish a significant risk that the present policy leads to erroneous decisions. While defendants admit that they do not use surveys to estimate exempt property, the record contains no evidence in plaintiffs' cases or those of any other Medicaid applicant that the Board inaccurately determined the amount of exempt land. The use of surveys would also be costly, complex, and cause delay for the Commonwealth, in direct conflict with Congress' intent that states use reasonable eligibility criteria which will not unduly delay eligibility decisions. See 42 U.S.C. § 1396a(a)(17).

Plaintiffs possess an interest not only in accurate and consistent decisions by Medicaid officials, but also in the ability to prepare their Medicaid applications and appeals. Adequate preparation requires knowledge of the standards and criteria which Virginia applies. The present regulation regarding exempt property adequately informs applicants of the standards used by Medicaid officials. Indeed, plaintiffs have not indicated the additional evidence or different arguments which they could have presented if they had known the Board would have interpreted the regulation as it did. Plaintiffs allege that Virginia's standards are too general, yet fail to demonstrate that they therefore suffered any prejudice. Nor have plaintiffs or the Court discovered specific and improved alternatives to the Commonwealth's present regulation. Thus the Court declines to second-guess the Commonwealth's decision to be flexible and to evaluate each parcel of land individually in the absence of evidence that Virginia's adjacent land policy has in fact often been applied inconsistently and has confused plaintiffs and other Medicaid applicants.

### C.

Lastly, plaintiffs point out that the Commonwealth's contiguous land policy was not promulgated in conformance with the Virginia Administrative Process Act (APA), Va.Code §§ 9–6.14:1 et seq. Defendants, however, have cited two Virginia Circuit Court opinions in which the APA was held not to apply to agency actions involving public welfare assistance. See Nelson v. Dept. of Welfare, Chancery No. 68018 (Fairfax County Cir. Ct., Jan. 21, 1981); Taylor v. Virginia Dept. of Welfare, Chancery Order Book 12, p. 257 (Greene County Cir. Ct., Jan. 16, 1979), Defendants' Exhibit 10 (filed Oct. 15, 1981). The Nelson and Taylor courts found that grants of public assistance under 63.1–119 of the Code of Virginia was a subject excluded by § 9–6.14:20(ii) of the Code. Section 9–6.14:20(ii) exempts from the APA any agency action relating to "grants of State or federal funds or property."

The Court similarly concludes that agency action relating to the grant of Medicaid Funds is excluded from the APA by § 9–6.14:20(ii). In the absence of authority to the contrary, the Nelson and Taylor cases are controlling. No significant difference exists between grants of welfare funds under Chapter 63 and grants of Medicaid benefits. Both programs are jointly funded by Virginia and the Federal government, and intertwined federal and state regulations regulate both programs. Therefore, under present Virginia law, the APA does not govern the Commonwealth's Medicaid regulations.

### CONCLUSION

For the reasons outlined above, defendants' motion for summary judgment will be granted.